## UNITED STATES v. TRAUGOTT SCHMIDT & SONS.

(District Court, E. D. Michigan, S. D. August 7, 1923.)

No. 6646.

War ⊕⟶4—Government not entitled to recover excess profits required from central wool dealers without reforming contract, when wrong license issued.

Where government issued license to defendant to operate as country wool dealer, and it only agreed to operate under rules of War Industries Board covering such dealers, government cannot recover excess profits which, by such rules, central wool dealers were required to pay the government in an action at law in which the court had no jurisdiction to reform contracts, though such license was issued through inadvertence, and defendant was permitted to operate as central dealer.

At Law. Action by the United States against Traugott Schmidt & Sons, a corporation. On demurrer, treated as motion to dismiss. Motion to dismiss granted.

Earl J. Davis, U. S. Atty., of Detroit, Mich., and J. F. Bohannan, Asst. Sol., United States Department of Agriculture, of Washington, D. C., for the United States.

Wurzer & Wurzer, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This is an action brought by the United States to recover from the defendant a sum amounting to approximately $50,000, which the government alleges the defendant received as excess profits from the sale of wool by it while it was licensed as an approved central wool dealer during the World War, and which it is alleged the defendant agreed to pay to the government as part of the consideration for the issuance to it of its license as such central wool dealer. Defendant has filed what it terms a demurrer (which, in accordance with the Michigan practice and the Conformity Act, will be treated as a motion to dismiss) based upon various grounds.

The basis of the right to recover asserted by the plaintiff is thus set forth in its declaration:

"For that, whereas, to wit, on the 21st day of May, 1918, the plaintiff, acting through the War Industries Board, issued regulations which prescribed the terms and conditions under which wool dealers might operate and engage in the wool business during the year 1918 which said regulations required that permits or licenses be obtained from said board by those who might desire to engage in the wool business during the said year, and which regulations also limited the profits which said permittees or licensees might make on the wool handled by them during the year aforesaid, and specifically provided in the case of central wool dealers that, if their gross profits were in excess of 5 per cent. on the season's business, such excess should be paid to the plaintiffs, to be disposed of as they might determine; that thereafter, on or about the 22d day of May, 1918, said defendant applied for a permit or license to the War Industries Board to operate as an approved central wool dealer at Detroit. Mich.. a distributing center for wool, and that on or about the 27th day of May, 1918. the defendant received a permit from said board, which in terms authorized said defendant to act as an approved wool dealer in country districts; but plaintiffs allege that the issuance of said permit in terms to act as a wool dealer in country districts in lieu of a permit to act as an approved wool dealer in a central distributing center was

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an inadvertence and mistake, and that it was the intention of plaintiffs, acting through said board, to issue to the defendant a permit to operate as an approved central wool dealer; that thereafter said defendant did, by virtue of the aforesaid permit, with the consent and approval of plaintiffs, acting through the aforesaid War Industries Board, operate and conduct business as an approved central wool dealer, subject to the rules and regulations of the said War Industries Board for the handling of fleece wool, and did thereby promise and agree with plaintiffs that, in consideration of the issuance of such permit and of the commissions allowed by said regulations to it as a permittee, it would abide by the said regulations of the War Industries Board, and pay to plaintiffs, when requested, all the profits in excess of 5 per cent. on all wool handled by said defendant during the year 1918, to be disposed of as plaintiffs might determine; and plaintiffs allege that during the season of 1918 the defendant made and received for and on account of its transactions and dealings in wool during the year 1918 profits in the sum of $50,749.85 over and above the 5 per cent. allowed by said regulations, as will more fully and at large appear by the particulars of demand hereto annexed and made a part of this declaration. By reason of which premises, an action has accrued to the said plaintiffs to demand and have of the defendant the sum of $50,749.85, with interest thereon at the rate of 6 per cent. per annum from the 18th day of May, 1921, yet said defendant, though requested, has not paid to the plaintiffs that sum of money, or any part thereof, but refuses so to do, and they therefore bring this suit."

It is urged, among other things, by the defendant, that this action is founded upon alleged contractual relations between it and the government arising from the license given to, and accepted by, it, but that the declaration discloses the absence of any basis for such relations in that it is there admitted by the government that the license or permit granted to the defendant was not of the kind sued on; that under the Michigan practice applicable reformation of instruments is strictly an equitable remedy and cannot be maintained in an action at law; that therefore the allegations of plaintiff in the declaration seeking to overcome the effect of the mistake referred to with respect to such license are merely argumentative conclusions of law, and do not entitle plaintiff, at least until after reformation of the instrument in question, to recover thereon in the present action.

I cannot avoid the conclusion that the contentions of defendant in this respect are correct and must be sustained. It appears from the exhaustive brief of the government that there is a well-defined distinction and difference between the rights and obligations of so-called country wool dealers and those of central wool dealers, and in the nature and effect of the regulations applicable to the two classes of dealers and in the amount of profits allowed them respectively. Thus, country wool dealers were those designated by the War Industries Board as such because they operated in country districts, purchasing directly from the grower and selling or consigning to the central dealers; while central dealers were so designated by said board for the reason that they operated in wool distributing centers and had the necessary facilities for storing, grading and sorting wool, although they sometimes also operated as country dealers and in such instances were allowed country dealers' profits in addition to their central dealers' profits. By the terms of various war-time statutes and executive regulations, all persons desiring to handle wool of the 1918 clip were required to procure from the War Industries Board a license to do so. The board required every

such person as a requisite for receiving such license to sign an agreement which, in the case of country wool dealers, recited that, such licensee having received from the Wool Division of said board a permit to operate as an approved wool dealer in country districts, thereby agreed to operate as such subject to the rules adopted by said board for the handling of fleece wool. A similar agreement was also required of central wool dealers, although as already stated, the regulations applicable to the two classes of dealers were different in substantial respects, including the bases and rates of profits which they were permitted to retain for themselves from their transactions as such dealers. It is asserted in the brief of the government that it was more advantageous to the defendant to be treated, as it was, as a central wool dealer than as a country dealer, but such a statement is obviously an irrelevant, ex parte reference, off the record, to a matter not in issue, and cannot be considered as having any legal effect or significance, save as it emphasizes the fact that the rights and obligations created by the agreement between the government and each of these two classes of dealers was different with respect to each class, with a corresponding difference in the measure and amount of recovery thereunder to which the government would be entitled in such an action as the present one. The brief of plaintiff, following and corroborating the declaration, shows further that the defendant received a formal permit to operate as a country dealer and executed and delivered to the War Industries Board an agreement to operate "as such dealer," subject to the rules of the board, and that under said rules such a dealer was allowed to retain profits amounting to 1½ cents per pound of wool, while a central dealer was permitted to retain a profit of 4 per cent. of the government price on wool sold by such dealer with an additional 1 per cent. on his season's business, any excess profits over and above the limits so imposed upon those two classes respectively being made subject to recovery and disposition by the government.

It will thus be seen that if the Government is seeking to recover a certain, specific sum claimed to represent excess profits which the defendant agreed, in accepting its license as a wool dealer, to pay, it is not only important, but necessary, that plaintiff show in its declaration that the defendant in fact entered into the very agreement on which liability is based. That the action is brought to enforce a contract between the defendant and the government is clear both from the declaration and from the brief of plaintiff. In the latter it is, among other things, asserted that:

"When the United States instituted this action, it did not sue to enforce a contract between the defendant and any grower or growers or to recover moneys owing by the defendant to such grower or growers, but simply and only to enforce a contract whereby the dealer agreed to pay to the government certain moneys which, by virtue of that agreement, became and are public moneys. The action is, therefore, one upon contract and in respect to the property of the United States."

It appears from the declaration and bill of particulars that the amount of recovery is based and computed upon the measure and rate of profits allowable to a central wool dealer. It is, however, plain

that the only written agreement alleged to have been executed by defendant expressly referred and applied to the regulations and requirements relating to and governing country dealers alone. The allegations in the declaration to the effect that the issuance of such a license "was an inadvertence and mistake, and that it was the intention of plaintiff * * * to issue to the defendant a permit to operate as an approved central wool dealer," may be appropriate in a suit in equity to reform the written contract entered into, but they cannot aid the plaintiff in the present action at law to enforce the written contract actually made, the rule being settled in the state of Michigan that a court of law is without jurisdiction to reform a written instrument. Bush v. Merriman, 87 Mich. 260, 49 N. W. 567; Skiba v. Gustin, 161 Mich. 358, 126 N. W. 464. That rule, under the Conformity Act (Comp. St. § 1537), is applicable and controlling here.

Discussion of the other questions raised by the defendant thus becomes, at least under the present declaration, academic and immaterial, as, for the reason pointed out, the motion to dismiss must be granted. An order will be entered in conformity with the terms of this opinion.